■ In the Matter of ANSONIA ASSOCIATES, Appellant, and ANSONIA RESIDENTS' ASSOCIATION et al., Respondents, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. [599 NYS2d 275] —Order, Supreme Court, New York County (David Saxe, J.), entered January 30, 1992, rendering decision in these consolidated CPLR article 78 proceedings, and order of the same court and Judge, entered October 8, 1992, clarifying the prior order on the landlord's motion, unanimously modified to the extent of reversing so much of those orders as held that rent reductions ordered by the Division of Housing and Community Renewal (DHCR) for failure to provide hotel services should not result in a permanent reduction of the base rent applicable as of the date of reclassification of these units as rent-stabilized apartments, and directing DHCR to recompute the reduced rents accordingly, and otherwise affirmed, without costs.

This is the latest chapter in the protracted litigation involving the old Ansonia Hotel at 2109 Broadway in Manhattan. In 1984, shortly after a Housing Court order formally declaring the premises no longer to be a hotel, and deferring the matter of rent adjustments to DHCR, the landlord rushed to offer renewal leases to its residents at inflated rentals, in letters that also contained unauthorized conditions for continued tenancy. The tenants' organizations urged their members not to respond to these notices. On August 13, 1984, before the landlord's unilateral lease options had expired, DHCR issued a

clarifying order, directing the landlord to offer new renewal lease options at reduced rental rates, tied to rents charged on June 30, 1982, and the landlord was further directed to submit initial registration statements of rent and services for all apartments to the agency within 30 days. The landlord never did comply with that directive, and that noncompliance, abetted by a series of legal maneuvers, has frustrated the reclassification process. Finally, on June 25, 1990, DHCR directed the landlord to issue renewal leases to all tenants, subject to compounded rent guideline increases. The tenants complained that such "deemed" renewals rewarded the landlord for its six years of intransigence. Justice Saxe annulled these deemed renewal lease rent increases. The landlord, which has ignored the DHCR directive to issue valid renewal leases since 1984, should not now be heard to complain that it has been denied the rent guideline increases it would have realized had it complied nine years ago.

Reduction of rents by DHCR, retroactive to July 15, 1982, the effective date of the statute requiring refunds for denial of such hotel services as provision of furniture and maid, linen and attended lobby services, was proper (*Matter of Bradford Co. v New York State Div. of Hous. & Community Renewal*, 182 AD2d 428, *lv denied* 80 NY2d 760). But the failure to provide necessary hotel services resulted in a DHCR-computed rent reduction which should also have been included in the calculation of the initial stabilized rent on the date of formal reclassification of the premises, August 13, 1984 (*Matter of Broadway Bretton v New York State Div. of Hous. & Community Renewal*, 182 AD2d 429, 430, *lv denied* 80 NY2d 758, *rearg denied* 81 NY2d 784).

Prior to August 13, 1984, the premises were technically still classified as a hotel. The Rent Stabilization Law originally provided that hotel landlords could establish rent for voluntarily vacated accommodations at free market rates (former Administrative Code of City of NY § YY51-5.0 [e]). That latitude was removed with the 1983 amendment of what is now Rent Stabilization Law (Administrative Code) § 26-510 (e), which placed the determination of appropriate rent for voluntarily vacated hotel accommodations in the hands of the Rent Guidelines Board (L 1983, ch 448). Thus, until August 14, 1983, the effective date of the amendment, the hotel landlord was entitled to charge free market rents, subject, of course, to reduction for complaining tenants who can establish the landlord's failure to provide necessary and ordered hotel services. Those rental rates remained valid until the premises were

formally reclassified as apartments subject to stabilization in August 1984.

The tenants' claim of rent control status for those in occupancy since before July 1, 1971 was properly rejected. Reclassification from hotel to apartment status is covered under Rent Stabilization Law (Administrative Code) § 26-506. There is no comparable provision in the Rent and Rehabilitation Law. In any event, the assertion of rent control status could have been raised upon commencement of these proceedings 10 years ago. The issue is now precluded from consideration at this late date (see, *Schuylkill Fuel Corp. v Nieberg Realty Corp.*, 250 NY 304, 306-307). Concur—Sullivan, J. P., Rosenberger, Wallach and Kupferman, JJ.